| Attorney or Party Name, Address, Telephone & Fax Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Barry E. Borowitz, #167418<br>**Borowitz & Clark, LLP**<br>100 N. Barranca Avenue, Suite 250<br>West Covina, CA 91791<br>(626) 332-8600 Tel.<br>(626)332-8644 Fax.<br>notices@blclaw.com<br><br>☒ *Attorney for Debtors (s)*<br>☐ *Debtor(s) appearing without an attorney* | |

<div align="center">

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

</div>

| In re:<br><br>RAFAEL V. ALVAREZ<br><br>AND<br><br>JENNIE MOLINA-ALVAREZ<br><br><div align="right">Debtor(s).</div> | CASE NO.: 2:11-bk-27892-TD<br><br>CHAPTER 13<br><br>**DEBTOR'S MOTION TO AVOID JUNIOR LIEN ON PRINCIPAL RESIDENCE [11 U.S.C. § 506 (d)]**<br><br>**Date:** June 9, 2011<br>**Time:** 9:00 a.m.<br>**Place:** 255 E. Temple Street, Courtroom 1345<br>Los Angeles, CA, 90012 |
|---|---|

**NAME OF CREDITOR HOLDING JUNIOR LIEN ("Respondent"): <u>Green Tree</u>**

**A. Property at Issue:**  Debtor moves to avoid the junior deed of trust, mortgage or other encumbrance (hereinafter, "Lien") encumbering the following real property (hereinafter, the "Property"), which is the principal residence of debtor(s).

> *Street Address:*   <u>**15717 Pine Avenue**</u>
> *Unit Number:* _____
> *City, State, Zip Code:* <u>**Fontana, CA 92335**</u>

Legal description or document recording number (including county of recording): **LOT 1 OF TRACT NO. 9200, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 128 PAGE(S) 47 AND 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.**

☐  See attached page.

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

## B. Case History:

**1.** A voluntary petition under Chapter ☐ 7 ☐ 11 ☐ 12 ☒ 13 was filed on: __**April 25, 2011**__

**2.** ☐ An Order of Conversion to Chapter 13 was entered on *(specify date)*:

## C. Grounds for Avoidance of Junior Lien:

**1.** As of **April 25, 2011**, the Property is subject to the following liens in the amounts specified securing the debt against the Property, which the debtor seeks to have treated as indicated:

   i. __**Bank of America, N.A./BAC Home Loans Servicing, LP**__   in the amount of $**333,236.61**   ☐ is ☒ is not to be avoided;

   ii. __**Green Tree**__ in the amount of $ **37,239.80**  ☒ is ☐ is not to be avoided;

   iii. _____in the amount of $_____ ☐ is ☐ is not to be       avoided;
   ☐ See attached page for additional lien (s).

**2.** As of **April 8, 2011**, Property is worth no more than $ **176,000.00**.

   a. As a result, Respondent's Lien encumbering the Property is wholly unsecured.

**3.** **Evidence in Support of Motion:**

a.   ☒ The amount of the lien identified in paragraph C(1)(i) is based on **the statement of Bank of America N.A./BAC Home Loans Servicing, LP dated March 16, 2011**, attached hereto and identified as Exhibit 1

b.   ☒ The amount of the lien identified in paragraph C(1)(ii) is based on **the statement of Green Tree dated March 12, 2011**, attached hereto and identified as Exhibit 2

c.   ☐ The amount of the lien identified in paragraph C(1)(iii)) is based on_____attached hereto and identified as Exhibit 3

d.   ☒ The relative priority of the liens encumbering the Property is established by evidence attached as Exhibit 3 and 4 (deeds of trust illustrating priority of the lien of **Bank of America, N.A./BAC Home Loans Servicing, LP** per recording numbers)

e.   ☒ The value of the Property from paragraph C(2) is based on **an appraisal completed on April 8, 2011 by Chad Harris, a certified appraiser** , attached as Exhibit 5

f.   ☐ Exhibit _____

g.   ☒ Debtor submits the attached Declaration(s). **Debtors' Declaration and Appraiser's Declaration**

h.   ☐ Other evidence *(specify)*:

---

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**4. WHEREFORE, Debtor prays that this Court issue an Order granting the following relief:**

a.    That the Property is valued at no more than $<u>176,000.00</u>.

b.    That no payments are to be made on the secured claim of the Respondent, and regular mortgage maintenance payments are not to be made, before the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

c.    That the Respondent's Claim on the Junior Position lien shall be allowed as a non-priority general unsecured claim in the amount per the filed Proof of Claim.

d.    That the avoidance of the Respondent's junior lien is contingent upon: The Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

e.    That the Respondent shall retain its lien in the junior position for the full amount due under the corresponding note and lien in the event of either the dismissal of the Debtor's chapter 13 case, the conversion of the Debtor's chapter 13 case to any other chapter under the United States Bankruptcy Code, or if the Property is sold or refinanced prior to the Debtor's ☒ completion of the chapter 13 plan, or ☒ receipt of a chapter 13 discharge.

f.    That in the event that the holder of the first position lien or any senior lien on the Property forecloses on its interest and extinguishes the Respondent's lien rights prior to the Debtor's completion of the chapter 13 plan and receipt of a chapter 13 discharge, the Respondent's lien shall attach to the proceeds greater than necessary to pay the senior lien, if any, from the foreclosure sale.

**5.** ☐ See attached continuation page for additional provisions.

Dated: <u>May 9, 2011</u>

**Respectfully Submitted,**

By: _____

<u>Signature of Debtor or Attorney for Debtor</u>

Name:   <u>Barry E. Borowitz</u>

*Type Name of Debtor or Attorney for Debtor*

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*October 2010*                                        Page 3                                        **F 4003-2.4.MOTION**

### DECLARATION OF RAFAEL ALVAREZ AND JENNIE MOLINA-ALVAREZ

We, Rafael Alvarez and Jennie Molina-Alvarez, hereby declare as follows:

1.  That we are the Debtors in the herein Chapter 13 bankruptcy;

2.  That we have personal knowledge of the facts set forth below and if called upon to testify, we could and would competently testify thereto;

3.  That we caused to be filed the instant Chapter 13 bankruptcy on April 25, 2011  (Case number: 2:11-bk-27892-TD);

4.  That we originally purchased the property located at 15717 Pine Avenue, Fontana, CA 92335 ("Property") in 2005 at the price of $395,000.00.

5.  That we valued the Property at $176,000.00 based on our knowledge of comparables in our neighborhood;

6.  That our valuation is also supported by an appraisal report completed on April 8, 2011, by Chad Harris, a licensed real estate appraiser (see Declaration of Chad Harris);

7.  That the current balance owed on our first mortgage held by Bank of America, N.A./BAC Home Loans Servicing, LP is approximately $333,236.61 (see previously referenced "Exhibit 1");

8.  That the current balance owed on our second mortgage held by Green Tree is approximately $37,240.00 (see previously referenced "Exhibit 2");

9.  That Bank of America, N.A./BAC Home Loans Servicing represents our First Deed of Trust (see previously referenced "Exhibit 3");

10. That Green Tree represents our Second Deed of Trust (see previously referenced "Exhibit 4");

11. That the encumbrance by the First Deed of Trust exceeds the fair market value of the Property ($176,000.00);

12. That we respectfully request that post petition payments to Green Tree be stayed;

13.    That we respectfully request that upon completion of all plan payments and entry of

discharge in this case, the Second Deed of Trust of Green Tree will be void and will not

constitute an encumbrance on the real property described in the motion.

We, Rafael V. Alvarez & Jennie Molina-Alvarez declare under penalty of perjury that the foregoing is true and correct and that the declaration was executed on ___5-6-11___ at West Covina, California.

Rafael Alvarez

Jennie Molina-Alvarez

6

## DECLARATION OF CHAD HARRIS

I, Chad Harris, hereby declare and state as follows:

1.    I have personal knowledge of the facts set forth below and if called upon to testify, I could and would testify thereto in a court of law;

2.    I have been a Real Estate Appraiser for the last 8 years and have been licensed for over 6 years;

3.    On April 8, 2011, I was retained by Rafael V. Alvarez and Jennie Molina-Alvarez to appraise their residence located at 15717 Pine Avenue Fontana, CA; 92335;

4.    I am familiar with the Uniform Standards of Professional Appraisal Practice as promulgated by the Appraisal Standards Board of The Appraisal Foundation and I appraised the Alanis residence in conformity with these Standards;

5.    I personally inspected the interior and exterior of the subject property and based upon my comparison of the subject property with the properties listed as comparable in my appraisal report, I concluded that the subject property was worth approximately $176,000 as of April 8, 2011, (see attached as Exhibit ___5___, a true and correct copy of the Residential Appraisal Report dated April 8, 2011).

I declare under the penalty of perjury that the foregoing is true and correct and that this declaration was executed on April 21, 2011 in Fontana, California.


_____
Chad Harris

# EXHIBIT "1"

**Bank of America**

**Home Loans**

Fecha del Estado de Cuenta 03/16/2011
**Número de Cuenta**   4126
Dirección de la Propiedad
15717 Pine Avenue

0012056 01 AT 0.354 **AUTO  T0 0 1572 92335-4434
PO AA AG 050------1-2-1- C0000066 1N 1 P12068
**RAFAEL V & RENA ALVAREZ**
15717 Pine Ave
Fontana CA 92335-4434

**Aviso de Opción de Pago:**
Basado en el estado de su préstamo, los cupones de pago para las Opciones de Pago en la página adjunta son calculados bajo la suposición de que recibimos la cantidad mínima del pago.

**PARA SERVICIO AL CLIENTE: 1.866.653.6183**

## Su Factura Mensual de Su Préstamo Hipotecario

**Retrato Hablado de Su Préstamo Hipotecario a Partir de Marzo 16, 2011**

| | |
|---|---|
| Tipo de Préstamo | 30 Yr Conv Jumbo PayOption ARM |
| Saldo Principal Actual | $333,236.61 |
| Cantidad Original del Préstamo | $316,000.00 |
| Límite Máximo (vea la explicación en la página abajo) | 115.00% |
| Margen | 3.075% |
| Tasa de Interés este Mes | 3.375% |
| Plazo Restante | 24 años, 0 meses |

### Información Adicional de la Cuenta

| | |
|---|---|
| Honorarios a Vencer | $55.00 |

BAC Home Loans Servicing, LP tiene el deber de informarle por ley que este comunicado proviene de un recaudador de deudas.

## Su Opción de Pago este Mes

Las cantidades que se ven abajo son pagos totales, los cuales incluyen cantidades recaudadas para artículos en la cuenta en custodia tal y como impuestos y primas de seguro.

| Opciones de Pago | Pago Total | Intereses Diferidos Intereses a Vencer | Principal/ Intereses a Vencer | Cargos Tardíos Sobresalientes** | Cuenta en Custodia** | Productos Opcionales*** |
|---|---|---|---|---|---|---|
| Opción 1 Pago Amortizado - Esta opción no está disponible este mes. | | | | | | |
| Opción 2 Pago Amortizado a 15-años | $3,370.78 | | $3,370.78 | | | |
| Opción 3 Pago Mínimo | $1,660.19 | | $1,660.19 | | | |
| Opción 4 Pago de intereses solamente - Esta opción no está disponible este mes. | | | | | | |

* La cantidad es negativa (-) signo de menos) que se muestran en la columna de los intereses diferidos son agregados al saldo principal. Esto resulta cuando se hace un pago mínimo que es menos de los intereses a vencer

** Sírvase notar  Los cargos tardíos sobresalientes se reflejan en la cantidad de la opción de pago si los cargos por pago tardío son menos de $30 00 en total

**Los Detalles de este Aviso Especial:** Agradecemos la oportunidad de ser la compañía de prestación de servicio para su préstamo, valoramos nuestra relación con usted y siempre buscamos la manera de mejorar la satisfacción de nuestros clientes  El motivo de este aviso especial es informarle por qué le enviamos e indicar que lo recibirá en todos los estados de cuenta mensuales futuros  Si prefiere no recibir estados de cuenta mensuales, por favor comuníquese al 1.866.653.6183.

**El Resultado de la Quiebra:** Nuestros expedientes indican que usted ha recibido una rehabilitación de quiebra (discharge of debt) sobre este adeudo en un caso de bancarrota.La Sección 524 del Código de Bancarrota aclara que usted no queda endeudado con la obligación financiera personal de dicha rehabilitación de quiebra.  La rehabilitación también protege al deudor de la responsabilidad financiera personal de cualquier intento de cobrar el adeudo exonerado con la misma.  No se le puede presionar a pagar dicho adeudo.  Al mismo tiempo, el instrumento de garantía (security agreement) permite la ejecución hipotecaria (foreclosure ) si los requisitos de los documentos del préstamo no se cumplen  Sírvase notar que este comunicado proviene de un recaudador de deudas. Este breve compendio no debe interpretarse como una asesoría legal. Debe consultar con sus asesores legales si tiene alguna duda con respecto a sus derechos.

**Detalles del Pago:** Hemos recibido varias llamadas telefónicas de clientes molestos con este mensaje, ya que declararon la quiebra hace tiempo.  Aún otros clientes han solicitado información detallada sobre el préstamo hipotecario  Por ello, la provisión de información detallada del préstamo se la otorga como una medida de cortesía.

Los documentos del préstamo indican que si no recibimos el próximo pago hipotecario programado para el 04/16/2011, se le cobrará al préstamo un recargo de pago tardío de $83 01.

Si desea recibir más información, incluyendo las opciones de pagar electrónicamente o dejar de recibir estados de cuenta mensuales por correo, por favor comuníquese al 1 866 653 6183  Agradecemos su patrocinio y deseamos seguir atendiéndole en los próximos años.

9

Límite Máximo   Según los documentos de su préstamo, el Límite Máximo es la cantidad máxima que su préstamo puede crecer antes de que se le requiera hacer el Pago en Total  Si usted alcanza el Límite Máximo, su Pago Máximo incrementará ha la cantidad suficiente para pagar el total de su saldo principal sin pagar en la Fecha de Vencimiento en pagos iguales conforme a la tasa de interés actual

EX | PG | of 2

**OPCIÓN 1**
**Pago Amortizado (Principal e intereses) -
basado en su plazo restante**
La cantidad necesaria para saldar el préstamo (principal e intereses) en la fecha de madurez, en pagos iguales considerados (a menos de que su préstamo globo tenga un pago a vencer un la fecha de vencimiento). Bajo los términos de su Pagaré, la cantidad de este pago se calcula bajo la suposición que la tasa de interés actual permanecerá en efecto durante el plazo restante de su préstamo.

**Esta opción no está disponible este mes porque la cantidad es igual o menos que el pago mínimo.**

**OPCIÓN 2**
**Pago de principal e intereses -
Basado en un plazo a 15-años**
La cantidad necesaria para saldar el préstamo (principal e intereses) dentro de un plazo de 15 años a partir de la fecha del primer pago a vencer, en pagos iguales considerables (a menos de que su préstamo globo tenga un pago a vencer en la fecha de vencimiento). Bajo los términos de su Pagaré, la cantidad de este pago se calcula bajo la suposición que la tasa de interés actual permanecerá en efecto durante el plazo restante de su préstamo.

| Número de Cuenta | 4126 | (9) | 04/01/2011 | $3,370.78 |

Rafael V & Rena Alvarez
15717 Pine Avenue
Fontana, CA 92335

Por favor actualice la información del e-mail ubicado en el dorso de este cupón

BAC Home Loans Servicing, LP
PO BOX 515503
LOS ANGELES, CA 90051-6803

Principal
Adicional

Cuenta en
Custodia
Adicional

Total del
Cheque

412690000033707800034 5379

⑈586990058⑈       4126⑈'

**OPCIÓN 3**
**Pago Mínimo**
Importante: Si esta cantidad es menos que el Pago de Intereses Únicamente, el pagar esta cantidad no será suficiente para pagar todos los intereses a vencer, tan poco reducirá su saldo principal y los intereses por pagar serán agregados a su saldo principal Esto se conoce como una "amortización negativa", lo cual significa que la cantidad que usted debe aumentara. Se le cobraran intereses en el total del principal Una Amortización Negativa reducirá la equidad que usted tiene en su casa y por lo tanto debe ser manejada precavidamente para evitar sorpresas inesperadas de aumentos significativos en los Pagos Mínimos futuros.

| Número de Cuenta | 114854126 | (9) | 04/01/2011 | $1,660.19 |

Rafael V & Rena Alvarez
15717 Pine Avenue
Fontana, CA 92335

Por favor actualice la información del e-mail ubicado en el dorso de este cupón

BAC Home Loans Servicing, LP
PO BOX 515503
LOS ANGELES, CA 90051-6803

Principal
Adicional

Cuenta en
Custodia
Adicional

Total del
Cheque

412690000016601900017 4320

⑈586990058⑈       4126⑈'

**OPCIÓN 4**
**Pago de Intereses Solamente**
Usted paga solamente los intereses que se cobraron en su préstamo por el mes anterior. Al hacer un Pago de Solo Intereses, usted evitará una amortización negativa, pero no se aplicará ninguna parte del pago para reducir el saldo principal de su préstamo

**Esta opción no está disponible este mes porque la cantidad es igual o menos que el pago mínimo.**

10

EX_1_PG_2_of_2

# EXHIBIT "2"

11

# green tree

Account Information

PO Box 6172
Rapid City, SD 57709-6172

| | |
|---|---|
| Account # | .6545 |
| Billing Date: | 03/12/2011 |
| Corporate Advance Balance*: | $ 13.64 |
| Principal Balance**: | $ 37,239.80 |

#BWNKDVR
#INJGEMIL0#

◄ 0324392 000094315 09GT01-055880-P1P2P3P4P8
RAFAEL V ALVAREZ
15717 PINE AVE
FONTANA CA 92335-4434

| | | |
|---|---|---|
| **NEXT PAYMENT DUE DATE:** | | **04/01/2011** |
| Current Payment: | $ | 272.82 |
| Past Due Payment: | $ | 545.64 |
| Escrow Due: | | |
| Insurance Due: | | |
| Additional Charges Due: | | |
| Billed Late Charges: | | |
| **Total Amount Due:** | $ | **818.46** |

Ilulandulullullullullulullullullullulullullulullullull

*Corporate Advances represents monies advanced by servicer to pay taxes, insurance, and any other
amount currently due that are not part of an escrow account.
**This is not the amount required to pay your loan in full.

## GENERAL INFORMATION

**CORRESPONDENCE ADDRESS**
Send inquiries (not payment) with your
account number to
Green Tree
PO Box 6172
Rapid City, SD 57709-6172

**CUSTOMER SERVICE**
For account information
Phone # 1-800-643-0202
Mon - Fri 7AM - 8PM CST
Saturday 7AM - 1PM CST

www.gtservicing.com

Telephone calls may be monitored or
recorded for quality assurance and
training purposes

**PAYMENT ADDRESS**
Green Tree
PO Box 94710
Palatine, IL 60094-4710

SEE REVERSE SIDE FOR
ADDITIONAL CONTACT AND
OTHER INFORMATION

## IMPORTANT MESSAGES

**This communication is from a debt collector. It is an attempt to collect a debt, and
any information obtained will be used for that purpose.**

**YOUR ACCOUNT IS SERIOUSLY PAST DUE ! CALL  800-643-0202  FOR PAYMENT
ARRANGEMENTS**

**YOUR TOTAL PRINCIPAL PAID IN 2010 WAS $ 0.00.
YOUR TOTAL INTEREST PAID IN 2010 WAS $ 0.00.**

## ACCOUNT INFORMATION SINCE LAST STATEMENT

Account reflects transactions posted as of 03/12/2011

INSURANCE

| Date Recv'd | Principal Amount | Interest Amount | Additional Principal | Unapplied Amount | Physical Damage | Supplemental Products | Other Insurance | Add'l Chrgs/ Late Chrgs | Escrow Amount |
|---|---|---|---|---|---|---|---|---|---|

---

Detach and return this portion with remittance

# green tree
relationships that work

·Please make checks payable to Green Tree·
**ACCOUNT NUMBER**    ·6545
Receipt of a personal check is authorization to collect payment electronically.
See back of statement for more information.

EQUAL HOUSING
LENDER

| | |
|---|---|
| **PAYMENT DUE DATE** | **04/01/2011** |
| **TOTAL PAYMENT DUE** | **818.46** |
| **TOTAL ENCLOSED** $ | |

Enter total amount of payment enclosed

Rafael V Alvarez
15717 Pine Ave
Fontana CA 92335-4434

GREEN TREE
PO BOX 94710
PALATINE, IL 60094-4710

Ildlulullullduldulullulluldudllillulullilluludldl

654 5    00027282        0000081846

EX 2 PG 1 of 1

# EXHIBIT "3"

13

RECORDING REQUESTED BY:
Investors Title Company

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENT TO:
Rena Alvarez, Rafael Alvarez
15717 Pine Avenue
Fontana, CA 92335

Order No. 14079608
Escrow No. 05-3982-LK
Parcel No. 0233-322-10-0-000

TRA: 074-031

Recorded in Official Records, County of San Bernardino    10/19/2005
8:00 AM
LMJ

 **LARRY WALKER**
Auditor/Controller — Recorder

768  Investors Title Co. — San Bern

Doc#:  **2005 – 0781034**     Titles:  1     Pages:   2

| | |
|---|---|
| Fees | 9.00 |
| Taxes | 434.50 |
| Other | 0.00 |
| PAID | $443.50 |

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS $434.50 and CITY S
_____ computed on full value of property conveyed, or
_____ Computed on full value less liens or encumbrances remaining at the time of sale.
_____ unincorporated area:            x    Fontana, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Don Wilson and Brasilia S. Euzebio-Wilson, husband and wife as joint tenants**

hereby GRANTS to **Rena Alvarez, a single woman and Rafael Alvarez, a married man as his sole and separate property, as joint tenants.**

the following described real property in the County of San Bernardino, State of California:

  **Lot 1 of Tract 9200, in the County of San Bernardino, State of California, as per Map recorded in Book 128, Page(s) 47 And 48 of maps, in the office of the County Recorder of said County**

Date    8/31/2005

_____          _____
Don Wilson                                Brasilia S. Euzebio-Wilson

STATE OF CALIFORNIA    }
                       } S.S.
COUNTY OF
San Bernardino
On September 30, 2005, before me, Barbara Rose Albanese ,
a Notary Public in and for said County and State, personally appeared **Don Wilson and Brasilia S. Euzebio-Wilson**
~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the
entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____

BARBARA ROSE ALBANESE
Commission # 1421837
Notary Public - California
San Bernardino County
My Comm. Expires Jun 3, 2007

# PENALTY OF PURJURY FOR NOTARY SEAL
## (GOVERNMENT CODE 27361.7)

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY:     BARBARA ROSE ALBANESE

DATE COMMISSION EXPIRES:     JUNE 3, 2007

COUNTY WHERE BOND IS FILED (IF APPLICABLE):   SAN BERNARDINO

STATE WHERE BOND IS FILED: CALIFORNIA

COMMISSION NUMBER (IF APPLICABLE):     1421837

PLACE OF EXECUTION: SAN BERNARDINO, CALIFORNIA

DATE:     October 14, 2005

SIGNATURE: _____

PRINT NAME:    SHERRY RAMIREZ

Recorded in Official Records, County of San Bernardino    10/19/2005

RECORDING REQUESTED BY:
Investors Title Company



**LARRY WALKER**
Auditor/Controller — Recorder

8:00 AM
LMJ

AND WHEN RECORDED MAIL TO:
AND MAIL TAX STATEMENT TO:
Rafael Alvarez and Jeannie M. Alvarez
15717 Pine Avenue
Fontana, CA 92335

768  Investors Title Co. — San Bern

Doc#:  2005—0781035

| Titles:  1 | Pages:  1 |

Order No. 14079608
Escrow No. 05-3982-LK
Parcel No. 0233-322-10-0-000

| Fees | 6.00 |
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $6.00 |

TRA: 074-031

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# GRANT DEED    $\not{\$0}$

THE UNDERSIGNED GRANTOR(S) DECLARE(S) THAT DOCUMENTARY TRANSFER TAX IS No Consideration and CITY $
_____ computed on full value of property conveyed, or
_____ computed on full value less liens or encumbrances remaining at the time of sale.
_____ unincorporated area:  _____ Fontana, and

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
**Jeannie M. Alvarez, Wife of the grantee herein**
                                    V.
hereby GRANTS to Rafael Alvarez, a married man as his sole and separate property

The following described property in the City of Fontana, County of San Bernardino, State of California,  Lot
1 of Tract No. 9200, as per map recorded in Book 128, Page(s) 47 through 48 of Maps, in the Office of the
County Recorder of said County.

"It is the express intent of the Grantor, being the Spouse of the Grantee, to Convey all right, title and interest
of the Grantor, Community or otherwise, in and to the herein described property to the Grantee as his/her
sole and separate property."

Date  9/21/05

Jeannie M. Alvarez

STATE OF CALIFORNIA    }
                                    } S.S.
COUNTY OF Los Angeles}

On September 21, 2005, before me  Ernie Padron , a Notary Public in and for said
County and State, personally appeared  Jeannie M. Alvarez , personally known to me
(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature



ERNIE PADRON
COMM. #1537169
NOTARY PUBLIC • CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires Dec. 20, 2008

Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller – Recorder

10/19/2005
8:00 AM
LMJ

768  Investors Title Co. – San Bern

Doc#:  **2005−0781036**

| Titles: | 1 | Pages: | 25 |
|---|---|---|---|

| Fees | 80.00 |
|---|---|
| Taxes | 0.00 |
| Other | 0.00 |
| PAID | $80.00 |

RECORDING REQUESTED BY

Investors Title Company

AND WHEN RECORDED MAIL TO

Name **COUNTRYWIDE HOME LOANS, INC.**
**MS SV-79 DOCUMENT PROCESSING**
Street **P.O. BOX 10423**
Address

City,State **VAN NUYS, CA 91410-0423**
Zip

Order No.  14079608110

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

Reccover (rev. 09/05/01)

Recording Requested By:
G. NORTON

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ANIK NORTIKYAN

————————— [Space Above This Line For Recording Data] —————————

05-3982-LK                           00011485412610005
[Escrow/Closing #]                      [Doc ID #]

# DEED OF TRUST

MIN 1000157-0005970988-7

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated OCTOBER 11, 2005 , together with all Riders to this document.
**(B) "Borrower"** is
RAFAEL V ALVAREZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, AND RENA
~~MOLINA RAFAEL,~~ A SINGLE WOMAN AS JOINT TENANTS
Alvarez, RA

CALIFORNIA-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 16                                              Initials: _____

-6A(CA) (0207)   CHL (09/02)(d)   VMP MORTGAGE FORMS - (800)521-7291          Form 3005  1/01
CONV/VA

* 2 3 9 9 1 *

* 1 1 4 8 5 4 1 2 6 0 0 0 0 0 1 0 0 6 A *

DOC ID #: 00011485412610005

Borrower's address is
7768 DACOSTA ST, DOWNEY, CA 90240
Borrower is the trustor under this Security Instrument.
(C) "Lender" is
AMERICA'S WHOLESALE LENDER
Lender is a CORPORATION
organized and existing under the laws of NEW YORK
Lender's address is
P.O. Box 10219, Van Nuys, CA 91410-0219
(D) "Trustee" is
CTC REAL ESTATE SERVICE
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated  OCTOBER 11, 2005    . The
Note states that Borrower owes Lender
THREE HUNDRED SIXTEEN THOUSAND and 00/100

Dollars (U.S. $ 316,000.00        ) plus interest. Borrower has promised to pay this debt in regular
Periodic Payments and to pay the debt in full not later than  NOVEMBER 01, 2035      .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [X] Other(s) [specify] |
| | | LEGAL DESCRIPTION |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association
or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine
transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii)

Initials: _____

(VMP) -6A(CA) (0207)        CHL (08/02)        Page 2 of 16        Form 3005 1/01

DOC ID #: 00011485412610005

conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.

(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.

(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY              of              SAN BERNARDINO              :
[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 0233-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                    which currently has the address of
                    15717 PINE AVENUE, FONTANA                              ,
                                        [Street/City]
California 92335-4434 ("Property Address"):
                    [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including,

Initials: _____

VMP®-6A(CA) (0207)        CHL (08/02)            Page 3 of 16                    Form 3005 1/01

DOC ID #: 0001148541261005

but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

Initials: _____

VMP -6A(CA) (0207)     CHL (09/02)              Page 4 of 16              Form 3005  1/01

DOC ID #: 0001485412610005

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

Initials: _____

-6A(CA) (0207)   CHL (09/02)          Page 5 of 16                          Form 3005 1/01



DOC ID #: 0001485412610005

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of

Initials: ___

-6A(CA) (0207)          CHL (09/02)              Page 6 of 16                              Form 3005 1/01

DOC ID #: 00011485412610005

paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. Occupancy. Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. Preservation, Maintenance and Protection of the Property; Inspections. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Initials: _____

-6A(CA) (0207)      CHL (09/02)            Page 7 of 16            Form 3005 1/01

DOC ID #: 0001148541261005

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower

Initials: _____

-6A(CA) (0207)          CHL (08/02)                    Page 8 of 16                           Form 3005 1/01

DOC ID #: 0001485412610005

shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security

Initials:

VMP®-6A(CA) (0207)          CHL (09/02)                    Page 9 of 16                         Form 3005 1/01

SAN BERNARDINO,CA   DOCUMENT: TD 2005.781036                    26              Page 10 of 25
Printed on 4/21/2011 4:16:33 PM      Provided by DataTrace System

EX 3 PG 13 of 28

DOC ID #: 00011485412610005

Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Initials: _____

@₀ -6A(CA) (0207)         CHL (09/02)              Page 10 of 16               Form 3005 1/01

DOC ID #: 00011485412610005

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

Initials: _____ _____

@-6A(CA) (0207)        CHL (09/02)            Page 11 of 16                    Form 3005 1/01



DOC ID #: 0001148541261005

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in

Initials: _[signature]_

-6A(CA) (0207)    CHL (09/02)    Page 12 of 16    Form 3005 1/01

DOC ID #: 0001148541261005

compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

Initials:

-6A(CA) (0207)          CHL (09/02)                    Page 13 of 16                    Form 3005 1/01



DOC ID #: 0001148541261000S

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. **Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. **Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. **Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Initials: _____

-6A(CA) (0207)        CHL (09/02)              Page 14 of 16                Form 3005  1/01

DOC ID #: 00011485412610005

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____    _____ (Seal)
RAFAEL V. ALVAREZ                                    -Borrower

_____    _____ (Seal)
RENA ~~MOLINA RAFAEL~~                                -Borrower
Alvarez *P.A.*

                             _____ (Seal)
                                                     -Borrower

                             _____ (Seal)
                                                     -Borrower

-6A(CA) (0207)        CHL (09/02)            Page 15 of 16                    Form 3005  1/01

DOC ID #: 00011485412610005

State of California
County of *Los Angeles*

On *Oct 12, 2005* before me, *Linda* } ss. *Torres*
personally appeared

*Rafael V. Alvarez & Rena Alvarez*

, ~~personally known to me~~

(or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) ~~is~~/are subscribed to the within instrument and acknowledged to me that ~~he/she~~/they executed the same in ~~his/her~~/their authorized capacity(ies), and that by ~~his/her~~/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

_____ (Seal)

LINDA TORRES
Commission # 1586686
Notary Public - California
Los Angeles County
My Comm. Expires Jun 11, 2009

Initials: _____

-6A(CA) (0207)    CHL (09/02)    Page 16 of 16    Form 3005 1/01

# LEGAL DESCRIPTION

# EXHIBIT A

All that certain real property in the County of SAN BERNARDINO, State of California, described as follows:

LOT 1, OF TRACT NO. 9200, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 128, PAGE(S) 47 AND 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.


APN No:  0233-322-10-0-000

**Prepared by: ANIK NORTIKYAN**

**AMERICA'S WHOLESALE LENDER**

Branch #: 0000918
55 SOUTH LAKE AVENUE #150
PASADENA, CA 91101
Phone: (626)431-2555
Br Fax No.: (626)792-3411

**DATE:** 10/11/2005
**CASE #:**
**DOC ID #:** 00011485412610005
**BORROWER:** RAFAEL V. ALVAREZ
**PROPERTY ADDRESS:** 15717 PINE AVENUE
FONTANA, CA 92335-4434

## LEGAL DESCRIPTION EXHIBIT A

**FHA/VA/CONV**
• Legal Description Exhibit A
1C404-XX (04/03)(d)





# ADJUSTABLE RATE RIDER
### (PayOption MTA Twelve Month Average Index - Payment Caps)

| 05-3982-LK | 00011485412610005 |
|---|---|
| [Escrow/Closing #] | [Doc ID #] |

THIS ADJUSTABLE RATE RIDER is made this ELEVENTH                    day of
OCTOBER, 2005        , and is incorporated into and shall be deemed to amend and supplement
the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by
the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
AMERICA'S WHOLESALE LENDER

("Lender") of the same date and covering the property described in the Security Instrument and
located at:

15717 PINE AVENUE
FONTANA, CA 92335-4434
[Property Address]

**THE NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE AND THE
MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT THAT THE MONTHLY
PAYMENT CAN INCREASE OR DECREASE. THE PRINCIPAL AMOUNT TO REPAY COULD
BE GREATER THAN THE AMOUNT ORIGINALLY BORROWED, BUT NOT MORE THAN THE
MAXIMUM LIMIT STATED IN THE NOTE.**

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agrees as follows:

**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for changes in the interest rate and the monthly payments, as follows:

● **PayOption MTA ARM Rider**
**1E310-XX (12/04)(d)**                    Page 1 of 6





DOC ID #: 0001148541261

## 2. INTEREST
### (A) Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of        1.000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 7(B) of the Note.

### (B) Interest Rate Change Dates
The interest rate I will pay may change on the first            day of DECEMBER, 2005      , and on that day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may change monthly, but the monthly payment is recalculated in accordance with Section 3.

### (C) Index
Beginning with the first Interst Rate Change Date, my adjustable interest rate will be based on an Index. The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month Average is determined by adding together the Monthly Yields for the most recently available twelve months and dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information. The Note Holder will give me notice of this choice.

### (D) Calculation of Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding        THREE & 75/1000 percentage point(s) (     3.075 %) ("Margin") to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My interest will never be greater than      9.950 %. Beginning with the first Interest Rate Change Date, my interest rate will never be lower than the Margin.

## 3. PAYMENTS
### (A) Time and Place of Payments
I will make a payment every month.

I will make my monthly payments on the FIRST          day of each month beginning on December, 2005      . I will make these payments every month until I have paid all the Principal and interest and any other charges described below that I may owe under the Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on NOVEMBER 01, 2035      , I still owe amounts under the Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

• **PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 2 of 6

EX 3 PG 24 of 28

DOC ID #: 0001148541261005

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments until the first Payment Change Date will be in the amount of
U.S. $ 1,016.38                       , unless adjusted under Section 3 (F).

**(C) Payment Change Dates**
My monthly payment may change as required by Section 3(D) below beginning on the
first           day of DECEMBER, 2006          , and on that day every 12th
month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also
will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment.
The "Minimum Payment" is the minimum amount Note Holder will accept for my monthly payment
which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below. If
the Minimum Payment is not sufficient to cover the amount of the interest due then negative
amortization will occur.
I will pay the amount of my new Minimum Payment each month beginning on each Payment
Change Date or as provided in Section 3(F) or 3(G) below.

**(D) Calculation of Monthly Payment Changes**
At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of
the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe
at the Payment Change Date in full on the maturity date in substantially equal payments at the interest
rate effective during the month preceding the Payment Change Date. The result of this calculation is
called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment
effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly
payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the
Principal and interest payment and does not apply to any escrow payments Lender may require under
the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my
Minimum Payment due the month preceding the Payment Change Date and multiplying it by the
number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or
3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the
Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly
payment.

● **PayOption MTA ARM Rider**
**1E310-XX (12/04)**                    Page 3 of 6

DOC ID #: 0001485412610005

**(E) Additions to My Unpaid Principal**
Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3(D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3(A).

**(F) Limit on My Unpaid Principal; Increased Monthly Payment**
My unpaid Principal can never exceed the Maximum Limit equal to ONE HUNDRED FIFTEEN percent ( 115 %) of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G) Required Full Payment**
On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H) Payment Options**
After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options;
    **(i) Interest Only Payment:** the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
    **(ii) Fully Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) at the Maturity Date in substantially equal payments.
    **(iii) 15 Year Amortized Payment:** the amount necessary to pay the loan off (Principal and interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

• **PayOption MTA ARM Rider**
**1E310-XX (12/04)**           **Page 4 of 6**

DOC ID #: 00011485412610005

These Payment Options are only applicable if they are greater than the Minimum Payment.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Section 18 of the Security Instrument entitled "Transfer of the Property or a Beneficial Interest in Borrower" is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by

**• PayOption MTA ARM Rider
1E310-XX (12/04)**                    Page 5 of 6

DOC ID #: 00011485412610005

this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____    -Borrower
RAFAEL V. ALVAREZ

_____    -Borrower
RENA MOLINA RAFAEL
Alvarez  RA

_____    -Borrower

_____    -Borrower

● **PayOption MTA ARM Rider**
**1E310-XX (12/04)**            **Page 6 of 6**

# EXHIBIT "4"

42

Recorded In Official Records, County of San Bernardino



**LARRY WALKER**
Auditor/Controller — Recorder

768  Investors Title Co. — San Bern

10/19/2005
8:00 AM
LMJ

Doc#:  **2005—0781037**

| Titles: | 1 | Pages: | 12 |
| --- | --- | --- | --- |
| Fees | | | 41.00 |
| Taxes | | | 0.00 |
| Other | | | 0.00 |
| PAID | | | $41.00 |

**RECORDING REQUESTED BY**

Investors Title Company

**AND WHEN RECORDED MAIL TO**

Name      **COUNTRYWIDE HOME LOANS, INC.**
            **MS SV-79 DOCUMENT PROCESSING**
Street      **P.O. BOX 10423**
Address

City,State   **VAN NUYS, CA 91410-0423**
Zip

Order No.  14079608110

SPACE ABOVE THIS LINE FOR RECORDER'S USE

# DEED OF TRUST

SEPARATE PAGE PURSUANT TO GOVT CODE 27361.6

Reccover (rev. 09/05/01)

Recording Requested By:
G. NORTON

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.

MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423
Prepared By:
ANIK NORTIKYAN

---

05-3982-LK                    00011485434210005
[Escrow/Closing #]               [Doc ID #]

# DEED OF TRUST AND REQUEST FOR NOTICE OF DEFAULT

THIS DEED OF TRUST is made this ELEVENTH            day of OCTOBER, 2005    , among
the Trustor,
RAFAEL V ALVAREZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, AND RENA
NOLINA RAFAEL, A SINGLE WOMAN AS JOINT TENANTS

Alvarez QA

                                    This instrument is second
                                    to a Deed of Trust
whose address is                    recording concurrently.
7768 DACOSTA ST, DOWNEY, CA 90240
(herein "Borrower"),
CTC REAL ESTATE SERVICE
400 COUNTRYWIDE WAY, MSN SV-88, SIMI VALLEY, CA 93065 , ,
(herein "Trustee"), and the Beneficiary,
Countrywide Bank, N.A.
A NATL. ASSN.                                                    organized
and existing under the laws of THE UNITED STATES        , whose address is
1199 North Fairfax St. Ste.500, Alexandria, VA 22314
(herein "Lender").

CALIFORNIA - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT          Form 3805
                                                                            Amended 9/99
                              Page 1 of 9
-76(CA) (0207).01 CHL (12/02)(d)    VMP MORTGAGE FORMS - (800)521-7291   Initials: QA

QA




DOC ID #: 0001485434210005

BORROWER, in consideration of the indebtedness herein recited and the trust herein created, irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the County of  SAN BERNARDINO  , State of California:
SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number:
which has the address of  15717 PINE AVENUE                                    [Street],
FONTANA                          [City], California  92335-4434   [ZIP Code]
(herein "Property Address");

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents (subject however to the rights and authorities given herein to Lender to collect and apply such rents), all of which shall be deemed to be and remain a part of the property covered by this Deed of Trust; and all of the foregoing, together with said property (or the leasehold estate if this Deed of Trust is on a leasehold) are hereinafter referred to as the "Property";

TO SECURE to Lender the repayment of the indebtedness evidenced by Borrower's note dated  OCTOBER 11, 2005  and extensions and renewals thereof (herein "Note"), in the principal sum of U.S. $ 39,500.00  , with interest thereon, providing for monthly installments of principal and interest, with the balance of the indebtedness, if not sooner paid, due and payable on  NOVEMBER 01, 2020  ; the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Deed of Trust; and the performance of the covenants and agreements of Borrower herein contained.

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property, and that the Property is unencumbered except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness evidenced by the Note and late charges as provided in the Note.

2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit development assessments, if any) which may attain priority over this Deed of Trust, and ground rents on the Property, if any, plus one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

Initials: _____

-76(CA) (0207).01    CHL (12/02)          Page 2 of 9                          Form 3805

DOC ID #: 0001485434210005

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Deed of Trust that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Deed of Trust, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Deed of Trust.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Deed of Trust.

Initials: _____

-76(CA) (0207).01    CHL (12/02)          Page 3 of 9          Form 3805

DOC ID #: 0001148543421005

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Deed of Trust is on a leasehold. If this Deed of Trust is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Deed of Trust, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Deed of Trust. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has a priority over this Deed of Trust.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Deed of Trust, but does not execute the Note, (a) is co-signing this Deed of Trust only to grant and convey that Borrower's interest in the Property to Trustee under the terms of this Deed of Trust, (b) is not personally liable on the Note or under this Deed of Trust, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Deed of Trust or the Note, without that Borrower's consent and without releasing that Borrower or modifying this Deed of Trust as to that Borrower's interest in the Property.

Initials: ___

EX 4 PG 5 of 12

DOC ID #: 0001148543421005

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Deed of Trust shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Deed of Trust. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Deed of Trust and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and this Deed of Trust at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Deed of Trust. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Deed of Trust without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies.** Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Deed of Trust, including the covenants to pay when due any sums secured by this Deed of Trust, Lender, prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Deed of Trust and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option may declare all of the sums secured by this Deed of Trust to be immediately due and payable without further demand and may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all reasonable costs and expenses incurred in pursuing the remedies provided in this paragraph 17, including, but not limited to, reasonable attorneys' fees.

Initials: _____

-76(CA) (0207).01    CHL (12/02)         Page 5 of 9                          Form 3805

DOC ID #: 0001148543421000S

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold and shall cause such notice to be recorded in each county in which the Property or some part thereof is located. Lender or Trustee shall mail copies of such notice in the manner prescribed by applicable law. Trustee shall give public notice of sale to the persons and in the manner prescribed by applicable law. After the lapse of such time as may be required by applicable law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in such order as Trustee may determine. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or Lender's designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property so sold without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all reasonable costs and expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees and costs of title evidence; (b) to all sums secured by this Deed of Trust; and (c) the excess, if any, to the person or persons legally entitled thereto.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Deed of Trust due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Deed of Trust discontinued at any time prior to five days before sale of the Property pursuant to the power of sale contained in this Deed of Trust or at any time prior to entry of a judgment enforcing this Deed of Trust if: (a) Borrower pays Lender all sums which would be then due under this Deed of Trust and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Deed of Trust; (c) Borrower pays all reasonable expenses incurred by Lender and Trustee in enforcing the covenants and agreements of Borrower contained in this Deed of Trust, and in enforcing Lender's and Trustee's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Deed of Trust, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unimpaired. Upon such payment and cure by Borrower, this Deed of Trust and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver; Lender in Possession. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust. Lender and the receiver shall be liable to account only for those rents actually received.

20. Reconveyance. Upon payment of all sums secured by this Deed of Trust, Lender shall request Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing indebtedness secured by this Deed of Trust to Trustee. Trustee shall reconvey the Property without warranty and to the person or persons legally entitled thereto. Such person or persons shall pay all costs of recordation, if any.

Initials: _____

-76(CA) (0207).01    CHL (12/02)                    Page 6 of 9                                    Form 3805

EX 4 PG 7 of 12

DOC ID #: 0001148543421000S

**21. Substitute Trustee.** Lender, at Lender's option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county where the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Instrument is recorded and the name and address of the successor trustee. The successor trustee shall, without conveyance of the Property, succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. The procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**22. Request for Notices.** Borrower requests that copies of the notice of default and notice of sale be sent to Borrower's address which is the Property Address. Lender requests that copies of notices of foreclosure from the holder of any lien which has priority over this Deed of Trust be sent to Lender's address, as set forth on page one of this Deed of Trust, as provided by Section 2924(b) of the Civil Code of California.

**23. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

### REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Deed of Trust to give Notice to Lender, at Lender's address set forth on page one of this Deed of Trust, of any default under the superior encumbrance and of any sale or other foreclosure action.

In accordance with Section 2924b, Civil Code, request is hereby made that a copy of any notice of default and a copy of any notice of sale under the deed of trust (or mortgage) recorded ,
in Book          , Page          , records of                          County, or filed
for record with recorder's serial number              ,                          County,
California, executed by
RAFAEL V ALVAREZ, A MARRIED MAN AS HIS SOLE & SEPARATE PROPERTY, AND RENA
MOLINA RAFAEL, A SINGLE WOMAN AS JOINT TENANTS


as trustor (or mortgagor) in which

is named as beneficiary (or mortgagee) and

as trustee be mailed to
Countrywide Bank, N.A.
at PO Box 10329, SV-225, Van Nuys, CA 91405

Initials:

-76(CA) (0207).01    CHL (12/02)          Page 7 of 9                    Form 3805

DOC ID #: 0001485434210005

NOTICE: A copy of any notice of default and of any notice of sale will be sent only to the address contained in this recorded request. If your address changes, a new request must be recorded.

State of California
County of
On _____ , before me
_____ , personally appeared

, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

IN WITNESS WHEREOF, Borrower has executed this Deed of Trust.

_____ (Seal)
RAFAEL V. ALVAREZ                    -Borrower

_____ (Seal)
RENA MOLINA RAFAEL                   -Borrower

_____ (Seal)
                                     -Borrower

_____ (Seal)
                                     -Borrower

*(Sign Original Only)*

-76(CA) (0207).01    CHL (12/02)            Page 8 of 9                    Form 3805

DOC ID #: 00011485434210005

State of California
County of *Los Angeles*                    } ss.

On *October 12, 2005* before me, *Linda Torres*
*Rafael V. Alvarez and Rena Alvarez* personally appeared
, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon behalf of which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

(This area for official notarial seal)                    (Seal)

LINDA TORRES
Commission # 1586686
Notary Public - California
Los Angeles County
My Comm. Expires Jun 11, 2009

.76(CA) (0207).01   CHL (12/02)                    Page 9 of 9                    Form 3805

# LEGAL DESCRIPTION

## EXHIBIT A

All that certain real property in the County of SAN BERNARDINO, State of California, described as follows:

LOT 1, OF TRACT NO. 9200, IN THE COUNTY OF SAN BERNARDINO, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 128, PAGE(S) 47 AND 48 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

APN No:  0233-322-10-0-000

Prepared by: ANIK NORTIKYAN

**Countrywide Bank, N.A.**

Branch #: 0000918
55 SOUTH LAKE AVENUE #150
PASADENA, CA 91101
Phone: (626)431-2555
Br Fax No.: (626)792-3411

**DATE:**    10/11/2005
**CASE #:**
**DOC ID #:**    00011485434210005
**BORROWER:** RAFAEL V. ALVAREZ
**PROPERTY ADDRESS:** 15717 PINE AVENUE
FONTANA, CA 92335-4434

## LEGAL DESCRIPTION EXHIBIT A

FHA/VA/CONV
• Legal Description Exhibit A
1C404-XX (04/03)(d)





SAN BERNARDINO,CA    DOCUMENT: TD 2005.781037                                   Page 12 of 12

Printed on 4/21/2011 4:16:38 PM    Provided by DataTrace System

54

EX 4 PG 12 of 12

# EXHIBIT "5"

55

**Harris Appraisals**

File No. C110072

# APPRAISAL OF



**Real Property**

## LOCATED AT:

**15717 Pine Ave
Fontana, CA 92335**

## CLIENT:

homeowner

## AS OF:

April 8, 2011

## BY:

Chad Harris

Harris Appraisals

File No. C110072

homeowner

File Number:  C110072

In accordance with your request, I have appraised the real property at:

15717 Pine Ave
Fontana, CA  92335

The purpose of this appraisal is to develop an opinion of the defined value of the subject property, as improved.
The property rights appraised are the fee simple interest in the site and improvements.

In my opinion, the defined value of the property as of   April 8, 2011                                    is:

$176,000
One Hundred Seventy-Six Thousand  Dollars

The attached report contains the description, analysis and supportive data for the conclusions,
final opinion of value, descriptive photographs, assignment conditions and appropriate certifications.

Chad Harris

EX 5 PG 2 of 17

Harris Appraisals
### Residential Appraisal Report
File No. C110072

**PURPOSE**

The purpose of this appraisal report is to provide the client with a credible opinion of the defined value of the subject property, given the intended use of the appraisal.

| Client Name/Intended User homeowner | E-mail | | |
|---|---|---|---|
| Client Address | City | State | Zip |

Additional Intended User(s)

Intended Use bankruptcy

**SUBJECT**

Property Address 15717 Pine Ave    City Fontana    State CA    Zip 92335

Owner of Public Record Alvarez Rena, Alvarez Rafael V    County San Bernardino

Legal Description Tract 9200 Lot No 1

Assessor's Parcel # 0233-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    Tax Year 2010    R.E. Taxes $ 1,071.00

Neighborhood Name N/A    Map Reference 604-F4    Census Tract 24.02

Property Rights Appraised [X] Fee Simple    [ ] Leasehold    [ ] Other (describe)

My research [ ] did [X] did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.

Prior Sale/Transfer    Date 10/19/2005    Price unknown/Gmt Dd    Source(s) Realist

**SALES HISTORY**

Analysis of prior sale or transfer history of the subject property and comparable sales, if applicable) The subject property has not sold or transferred in the past 36 months. The subject property has not been listed in the past 12 months.

Offerings, options and contracts as of the effective date of the appraisal    None

**NEIGHBORHOOD**

| Neighborhood Characteristics | | | One-Unit Housing Trends | | | One-Unit Housing | | Present Land Use % | |
|---|---|---|---|---|---|---|---|---|---|
| Location [ ] Urban [X] Suburban [ ] Rural | | | Property Values [ ] Increasing [ ] Stable [X] Declining | | | PRICE $(000) | AGE (yrs) | One-Unit | 85% % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | | | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | | | 76 Low | 5 | 2-4 Unit | 5% % |
| Growth [ ] Rapid [X] Stable [ ] Slow | | | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | | | 240 High | 96 | Multi-Family | 3% % |
| | | | | | | 152 Pred. | 36 | Commercial | 5% % |
| | | | | | | | | Other | 2% % |

Neighborhood Boundaries Rail road tracks north, Citrus Avenue east, 10 Freeway south, Cherry Avenue west.

Neighborhood Description See Attached Addendum.

Market Conditions (including support for the above conclusions) See Attached Addendum.

**SITE**

Dimensions 115x175    Area 20,125 Sq.Ft.    Shape Rectangular    View No View

Specific Zoning Classification SFR    Zoning Description Single Family Res

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | City Service | Water | [X] | City Service | | Street Asphalt | [X] | |
| Gas | [X] | City Service | Sanitary Sewer | [ ] | [X] Septic Tank | | Alley None | | |

Site Comments The subject site is a corner lot located on a residential street. The subject site and the neighborhood is located within two miles of the California Speedway. As a result of the subject's proximity to the auto race complex the property is subject to noise from frequent motorsports functions which is an external obsolescence.

**IMPROVEMENTS**

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION | materials | INTERIOR | materials |
|---|---|---|---|---|---|
| Units [X] One [ ] One w/Acc. unit | [X] Concrete Slab [ ] Crawl Space | Foundation Walls | Concrete/Avg. | Floors | Cpt./HWF/Tile/Avg. |
| # of Stories One | [ ] Full Basement [ ] Partial Basement | Exterior Walls | Stucco/Avg. | Walls | Lathe Plstr/Avg. |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area 0.0000 sq. ft. | Roof Surface | Comp./Avg. | Trim/Finish | Wd. Avg. |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | Gutters & Downspouts Aluminum/Avg. | | Bath Floor | Tile/Avg. |
| Design (Style) Single Family | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type | Sliders/Avg. | Bath Wainscot | Fiberglass/Avg. |
| Year Built 1976 | | Storm Sash/Insulated None | | Car Storage | [ ] None |
| Effective Age (Yrs) 30 | | Screens | Yes/Avg. | [X] Driveway # of Cars 2 | |
| Attic [ ] None | Heating [X] FWA [ ] HW [ ] Radiant | Amenities | WoodStove(s) # | Driveway Surface Concrete | |
| [ ] Drop Stair [ ] Stairs | [ ] Other Fuel Gas | [X] Fireplace(s) # | [X] Fence | [X] Garage # of Cars 2 | |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [X] Patio/Deck | [ ] Porch | [ ] Carport # of Cars | |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [ ] Pool | [ ] Other | [X] Att. [ ] Det. [ ] Built-in | |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe) | | | | | |
| Finished area above grade contains: 6 Rooms 3 Bedrooms 2 Bath(s) 1,170 Square Feet of Gross Living Area Above Grade | | | | | |

Additional Features Subject has a patio, fireplace, and a detached casita.

Comments on the Improvements The subject appears to be built with average quality materials and craftsman and is in average condition. No signs of physical inadequacies were present. A portion of th subject's casita has an additional bathroom that it is not permitted.

Produced using ACI software, 800.234.8727 www.aciweb.com
Page 1 of 2
This form Copyright © 2005-2008 ACI Division of ISO Claim Services, Inc., All Rights Reserved
(gPAR™) General Purpose Appraisal Report 1/17/2006
GPAR1006 05/28/13.2008



EX 5 PG 3 of 17

Harris Appraisals

## Residential Appraisal Report

File No. C110072

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| | 15717 Pine Ave | 15561 Randall Ave | | 15753 Randall Ave | | 9372 Beech Ave | |
| Address  Fontana | | Fontana | | Fontana | | Fontana | |
| Proximity to Subject | | 0.25 miles SW | | 0.17 miles SSE | | 0.58 miles WSW | |
| Sale Price | $ | | $ 160,000 | | $ 225,000 | | $ 82,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq.ft. | $ 132.45 sq.ft. | | $ 160.71 sq.ft. | | $ 71.74 sq.ft. | |
| Data Source(s) | Site Inspection | MLS# I10097490 - No Doc # | | MLS# C10032046 - No Doc # | | MLS# P763083 - No Doc # | |
| Verification Source(s) | County Recs | $159,900 - | | $245,000 - | | $82,000 - | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | FHA $152,940 | | Cnvtl $152,600 | | Cnvtl $62,600 | |
| Concessions | N/A | STD Sale | | STD Sale | | REO | |
| Date of Sale/Time | N/A | 01/03/2011 | | 03/10/2011 | | 03/11/2011 | |
| Location | Suburban | Suburban | | Suburban | | Suburban | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | Fee Simple | |
| Site | 20,125 Sq.Ft. | 11,250 SqFt | 16,000 | 34,440 SqFt | -12,000 | 18,525 SqFt | 3,000 |
| View | No View | No View | | No View | | No View | |
| Design (Style) | Single Family | Single Family | | Single Family | | Single Family | |
| Quality of Construction | Average | Average | | Average | | Average | |
| Actual Age | 35 | 58 | | 39 | | 51 | |
| Condition | Average | Remodeled/Sup. | -4,000 | Average | | Inferior | 7,000 |
| Above Grade | Total / Bdrms / Baths | Total / Bdrms / Baths | | Total / Bdrms / Baths | | Total / Bdrms / Baths | |
| Room Count | 6 / 3 / 2 | 6 / 3 / 2 | | 6 / 3 / 1.5 | 2,000 | 6 / 3 / 2 | |
| Gross Living Area | 33  1,170 sq.ft. | 1,208 sq.ft. | | 1,400 sq.ft. | -7,600 | 1,143 sq.ft. | |
| Basement & Finished | N/A | N/A | | N/A | | N/A | |
| Rooms Below Grade | N/A | N/A | | N/A | | N/A | |
| Functional Utility | Average | Average | | Average | | Average | |
| Heating/Cooling | Gas FAU C/Air | FWA/Evap | 1,500 | Gas FAU C/Air | | Gas Wall/None | 2,000 |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | None Noted | |
| Garage/Carport | 2 Car Garage | 2 Garage | | 2 Garage | | 1 Garage | 5,000 |
| Porch/Patio/Deck | Patio | Patio,Porch | | Deck | | Patio | |
| | Casita | | 5,000 | | 5,000 | | 5,000 |
| | | | | Pool | -10,000 | | |
| | | DOM: 24 | | DOM: 336 | | DOM: 36 | |
| Net Adjustment (Total) | | [X]+ []- $ 18,500 | | []+ [X]- $ 22,600 | | [X]+ []- $ 22,000 | |
| Adjusted Sale Price | | Net Adj. 11.6% | | Net Adj. -10.0% | | Net Adj. 26.8% | |
| of Comparables | | Gross Adj 16.6% $ 178,500 | | Gross Adj 16.3% $ 202,400 | | Gross Adj 26.8% $ 104,000 | |

Summary of Sales Comparison Approach   All market data was confirmed by Multiple Listing Service, Appraiser drive by,  Agent or Public Records.
Comparables were given consideration and weight based on net and gross adjustments. The comparables included in this report were
the best available at the time of inspection and all information was deemed reliable.  There was no adjustment made for bedroom count
and is considered part of the square footage dollar adjustment. At the time of inspection there were no available comparable sales with
similar casita amenity, therefore across the board adjustments were given by the appraiser. All comparables used in this report are
located in similar competing neighborhoods and there is no adjustment given for location. Most weight was given to comparable #1 as
the most recent standard comparable sale.

### COST APPROACH TO VALUE

Site Value Comments

| ESTIMATED  [ ] REPRODUCTION OR  [ ] REPLACEMENT COST NEW | OPINION OF SITE VALUE .......................... = $ | |
|---|---|---|
| Source of cost data | Dwelling  Sq. Ft. @ $ ........... = $ | 0 |
| Quality rating from cost service  Effective date of cost data | Sq. Ft. @ $ ........... = $ | 0 |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Sq. Ft. @ $ ........... = $ | 0 |
| The Cost Approach has not been performed in this assignment- | Garage/Carport  Sq. Ft. @ $ ........... = $ | 0 |
| this does not affect the ability to obtain credible results as buyers | Total Estimate of Cost-New ........... = $ | 0 |
| and sellers as well as the appraiser's peers do not rely upon this | Less  Physical  Functional  External | |
| approach for single-family residential property that is at it's | Depreciation  = $( | 0 |
| Highest & Best Use. The Income Approach was not utilized nor | Depreciated Cost of Improvements ........... = $ | 0 |
| considered the subject is an owner occupied single- | "As-is" Value of Site Improvements ........... = $ | |
| family residence in a neighborhood of similar type single- | | |
| family residence not intended for income production. | INDICATED VALUE BY COST APPROACH ........... = $ | 0 |

| INCOME APPROACH TO VALUE | | |
|---|---|---|
| Estimated Monthly Market Rent $ | N/A  X Gross Rent Multiplier  N/A = $ | N/A Indicated Value by Income Approach |

Summary of Income Approach (including support for market rent and GRM)

Indicated Value by  Sales Comparison Approach $ 176,000   Cost Approach (if developed) $ N/A   Income Approach (if developed) $ N/A

Most weight and consideration has been given to the market approach, It best reflects buyers and sellers for this type of
property. The Cost Approach is best when the improvements are new.  The Income approach is not considered since SFRs do not trade
based upon their income generating ability.

This appraisal is made  [X] "as is,"  [ ] subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed,
[ ] subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed  [ ] subject to the following
See Attached Addendum.

Based on the scope of work, assumptions, limiting conditions and appraiser's certification, my (our) opinion of the defined value of the real property
that is the subject of this report is $ 176,000   as of April 8th, 2011   , which is the effective date of this appraisal.

Produced using ACI software, 800.234.8727 www.aciweb.com  Page 2 of 2

This form Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc.  All Rights Reserved
iqPAR™) General Purpose Appraisal Report  3/2005
GPAR1004  05/04/11/0808



Harris Appraisals

EX 5 PG 4 of 17

Harris Appraisals

## Residential Appraisal Report

File No. C110072

| FEATURE | SUBJECT | COMPARABLE SALE NO. 4 | | COMPARABLE SALE NO. 5 | | COMPARABLE SALE NO. 6 | |
|---|---|---|---|---|---|---|---|
| | 15717 Pine Ave | 15355 Randall Ave | | 9820 Beech Ave | | | |
| Address Fontana | | Fontana | | Fontana | | | |
| Proximity to Subject | | 0.46 miles WSW | | 0.97 miles SSW | | | |
| Sale Price | $ | | $ 168,400 | | $ 150,000 | | $ |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 147.85 sq. ft. | | $ 125.42 sq. ft. | | $ 0.00 sq. ft. | |
| Data Source(s) | Site Inspection | MLS# I10130134 - Listing | | MLS# Y1000344 - Pending | | | |
| Verification Source(s) | County Recs | $168,400 - | | $150,000 - | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sale or Financing | N/A | N/A | | N/A | | | |
| Concessions | N/A | STD Sale | | Shrt Sale | | | |
| Date of Sale/Time | N/A | Current Listing | | Pending Sale | | | |
| Location | Suburban | Suburban | | Suburban | | | |
| Leasehold/Fee Simple | Fee Simple | Fee Simple | | Fee Simple | | | |
| Site | 20,125 Sq.Ft. | 17,300 SqFt | 5,000 | 24,600 SqFt | -9,000 | | |
| View | No View | No View | | No View | | | |
| Design (Style) | Single Family | Single Family | | Single Family | | | |
| Quality of Construction | Average | Average | | Average | | | |
| Actual Age | 35 | 64 | | 44 | | | |
| Condition | Average | Gd/Remodeled | -8,000 | Average | | | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | | Total Bdrms Baths | | Total Bdrms Baths | |
| Room Count | 6  3  2 | 6  3  2 | | 5  3  1 | 5,000 | | |
| Gross Living Area | 33  1,170 sq. ft. | 1,139 sq. ft. | | 1,196 sq. ft. | | sq. ft. | |
| Basement & Finished | N/A | N/A | | N/A | | | |
| Rooms Below Grade | N/A | N/A | | N/A | | | |
| Functional Utility | Average | Average | | Average | | | |
| Heating/Cooling | Gas FAU C/Air | Gas Wall/None | 2,000 | Gas Wall/None | 2,000 | | |
| Energy Efficient Items | None Noted | None Noted | | None Noted | | | |
| Garage/Carport | 2 Car Garage | None | 10,000 | 2 Garage | | | |
| Porch/Patio/Deck | Patio | Patio | | Patio | | | |
| | Casita | | 5,000 | | 5,000 | | |
| | | DOM: 111 | | DOM: 9 | | | |
| Net Adjustment (Total) | | [X]+  [ ]-  $ | 14,000 | [X]+  [ ]-  $ | 3,000 | [X]+  [ ]-  $ | 0 |
| Adjusted Sale Price | | Net Adj. 8.3 % | | Net Adj. 2.0% % | | Net Adj. 0.0% % | |
| of Comparables | | Gross Adj 17.8% % $ | 182,400 | Gross Adj 14.0% % $ | 153,000 | Gross Adj 0.0 % % $ | 0 |

Summary of Sales Comparison Approach  The appraiser adjust price per square foot at $38.00 per square foot based on discounts for site and amenity conditions in the market at the time of sale. The appraiser only adjusts for discrepancies of 100 square feet or more. Bed counts are included in square footage adjustments, where applicable, otherwise adjustments for superior room count and additional amenities are based on paired sale analysis of existing comparables and a brief overview of surrounding listings sales.  Comparable # 4 previously sold as an REO on 5/17/2010 on $89,000.



Produced using ACI software, 800.234.8727 www.aciweb.com
Additional Comparables

This form Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc., All Rights Reserved
(jPAR™) General Purpose Appraisal Report  12/2005
GPAR1004_03 04112008

EX 5 PG 5 of 17

| Client: homeowner | | File No.: C110072 |
| Property Address: 15717 Pine Ave | | Case No.: |
| City: Fontana | State: CA | Zip: 92335 |

**DEFINITION OF VALUE...**the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:(1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial agreements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by seller as a result of tradition ot law in a market area; these costs are readily indentifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgement.

**COMMENTS ON DIGITAL SIGNATURE...**This report contains digital signatures -- in line with applicable federal law. The affixed digital signature is a true representation of my hand-affixed signature. Furthermore, the ability to affix my digital signature to this or any other appraisal report is secured from use by parties other than myself by encryption and password protection.

**COMMENTS ON COMPETITIVE LISTINGS...*** I have considered relevant competitive listings and/or contract offerings in the performance of this appraisal an in the trending information reported in this section. If a trend is indicated, I have attached an addendum providing relevant competitive listing/contract offering data.

**COMMENTS ON SALES COMPARISON...**All sales are considered the best available and deemed reliable. All sales are considered from competing neighborhood locations. All comparable sales are of similar style. All sales are closed transactions. All sales are considered the best available and deemed reliable. No adjustments were made for date of sale or appreciation. The appraiser adjust price per square foot at $33.00 per square foot based on discounts for site and amenity conditions in the market at the time of sale. The appraiser only adjusts for discrepancies of 100 square feet or more. Bed counts are included in square footage adjustments, where applicable, otherwise adjustments for superior room count and additional amenities are based on paired sale analysis of existing comparables and a brief overview of surrounding listings sales. If similar amenities are not available within the market, no positive adjustments are made due to lack of support within the market and to avoid across the board adjustments.

**FINAL RECONCILIATION...**The income approach is not considered to be relevant as there is no market data to support this type of analysis. the market approach is traditionally considered to be the most reliable indicator of value as it best reflects the current market conditions, including financing.

**SALES HISTORY..**The appraiser has confirmed that the subject has not sold, transferred, or been listed in the last 36 months.

**PERSONAL PROPERTY...**No items of personal property, fixtures or intangible property were included in the estimated property value, unless otherwise stated in the report.

**ENVIRONMENTAL DISCLAIMER...**The value estimated in this report is based on the assumption that the property is not negatively affected by the existence of hazardous substances or detrimental environmental conditions. The appraiser is not an expert in the identification of hazardous substances or detrimental environmental conditions. The appraiser's routine inspection of the subject property did not develop any information that indicated any apparent significant hazardous substances or detrimental environmental conditions which would affect the property negatively. It is possible that tests and inspections made by a qualified hazardous substance and environmental expert would reveal the existence of hazardous materials and environmental conditions on or around the property that would negatively affect its value. The appraiser, however, is not qualified to detect such substances. The existence of any potential urea-formaldehyde foam insulation, hazardous waste material or radon may have an effect on the value of the property. We urge the client to retain an expert in this field if desired.

**SUPPLEMENTAL CERTIFICATION AND LIMITING CONDITIONS..1.** Unless otherwise indicated in this report, the date of this report is the same date as the date of the appraisal.2. Unless otherwise indicated in this report, a financial institution intends to use this report to determine the market value of the subject property for purposes of granting a federally related mortgage loan.3. Unless otherwise indicated in this report, the subject property's market value was based on the cash price.4. Unless otherwise indicated in this report, all usual valuation approaches were utilized.5. Unless otherwise indicated in this report no extraordinary influences (e.g., easements, restrictions, encumbrances, leases, reservations, covenants, contracts, special assessments) on market value exist.6. Unless otherwise indicated and specifically itemized with a value estimate, no personal property, trade fixtures, or intangible items are included in the appraisal of the subject property.7. Unless otherwise indicated in this report the subject property os not currently listed for sale or subject to any safe agreement or option.8. Unless otherwise indicated in this report and specialty itemized, according to public records, listing services and the homeowner, the subject property has not bee transferred in the past 12 months.9. Unless otherwise indicated in this report, the estimated marketing time for the subject property was determined from available data services and listing services. Unless otherwise indicated in this report, information from such data and listing services is believed to be reliable and was considered in the final reconciliation of market value.10. Unless otherwise indicated in this report, the reasoning used to determine the selection of "increasing", "stable", or "declining" in the neighborhood section of current market conditions and trends of this report, was based on information provided by available data services and listing services.11. Unless otherwise indicated in this report, this report is based on current land use regulations and the probability of modification of current land use regulations is unlikely.12. Unless otherwise indicated in this report, the site value listed in

| Client: homeowner | | File No.: C110072 | |
|---|---|---|---|
| Property Address: 15717 Pine Ave | | Case No.: | |
| City: Fontana | State: CA | | Zip: 92335 |

the appraisal is determined as though the land is vacant and available for development to its highest investment use and the appraisal of improvements is based on their actual contribution to the site.13.  Unless otherwise indicated in this report, the appraised value is not effected by anticipated public or private improvements.14.  Unless otherwise indicated in this report, if proposed improvements were appraised the following were (and remain available to be) inspected: Plans, specifications and related documentation to identify scope and character of improvements; evidence indicating probable time of completion; and clear and appropriate evidence supporting development costs, anticipated earning, occupancy projections and anticipated competition on completion.15.  Unless otherwise indicated in this report, the subject property is not a fractional interest, physical segment, component or partial holding of a property.16.  Unless otherwise indicated in this report, information of rental data, operating expenses and capitalization was not obtained due to the lack of reliable rental data for single family homes in the subject property's neighborhood.17.  Unless otherwise indicated in this report, the subject property is not a leased fee or lease hold estate.18.  Unless otherwise indicated in this report, the existence of hazardous substances, including without limitation, asbestos, polychlorinated biphenyls, petroleum leakage, or agricultural chemicals, which may or may not be present on the property, or other environmental conditions, were not called to the attention of nor did the appraiser become aware of such during the appraiser's inspection.  The appraiser has no knowledge of existence of such material on or in the property  unless otherwise stated.  If the presence of such substances, such as asbestos, urea-formaldehyde, foam insulation, or other hazardous substances or environmental conditions may affect the value of the property, the value estimated is predicted on the assumption that there is no such condition on or in the property or in such proximity there to that it would cause a loss in value.19.  Unless otherwise indicated in this report, no other limiting conditions or extraordinary assumptions (e.g. pending lease, atypical financing, completion of improvements) directly affect the appraisal of the analyses, opinions, and conclusions stated herein.20.  Additional Certifications:A.  Unless otherwise stated in this report, in accordance with the competency provision of the Uniform Standard of Professional Appraisal Practice, I have verified that my knowledge and experience are sufficient to allow me to competently complete this appraisal.B.  I have no personal interest or bias with respect to the parties involved or the subject property.C.  The appraisal assignment was not based on a requested minimum valuation, a specific valuation, or the approval of a loan, and by compensation is not contingent upon direction in value that favors the cause of the client. the amount of the value estimate, the attainment of a stipulated result or the occurrence of a subsequent event.D.  My analyses, opinions, and conclusions were developed, and this report has been prepared in conformity with Uniform Standard of Professional Appraisal Practice.  The departure provision of the Uniform Standard of Professional Appraisal Practice was not utilized in preparation of this report.E.  The report analyses, opinions and conclusions are limited only by the reported assumptions, limiting conditions and are my personal, unbiased analyses, opinions and conclusions.F.  Unless otherwise stated in this report, no one provided significant professional assistance to me in the preparation of this report.G.  I certify that, to the best of my knowledge and belief, the statements contained in this report are true and correct.H.  I certify that on the date of this appraisal report I was actively licensed by the appropriate state agency to perform the subject appraisal.

**Neighborhood Description**
Fontana is a city of almost 200,000 residents in San Bernardino County, California. Founded in 1913, it remained essentially rural until World War II, when entrepreneur Henry J. Kaiser built a large steel mill in the area. It is now a regional hub of the trucking industry, with Interstate 10 and State Route 210 transecting the city from east to west, and Interstate 15 passing diagonally through its northwestern quadrant.

It is home to the largest of the San Bernardino County system libraries, a renovated historic theater, a municipal park, and the Auto Club Speedway on the site of the Kaiser Steel Mill. Fontana also hosts the Fontana Days Half Marathon and 5K run. This race is on record as the fastest half-marathon course in the world.

The U.S. Census estimated Fontana's population at 170,099 in 2006, and the California State Department of Finance estimated it at 190,356 in 2010.

The subject is located in a community of homes  that are similar  in design, age and appeal. The neighborhood exhibits average to good maintenance levels. The subject neighborhood is within relatively close proximity to the  Freeway which grants  access to employment centers .  The subject market is located close to recreational areas, shopping, schools, and municipal services and has average appeal to buyers in the market.

**Neighborhood Market Conditions**
The subject's market, along with most of Southern California has experienced an elevated number of short pays and REO activity which have contributed to overall market decline. The subject market is an REO driven market taking into consideration that 70% of closed sales within the past 120 days in the subject market were either REO or short pay transactions. Currently approximately 75 % of active listings are either short pay off or REO listings. RCurrent market conditions favor standard conventional and FHA financing. Market time was obtained from multiple listing service data and the appraisers' observations of the subject property's market area. MARKETING TIME: The estimated marketing time for the subject under current market conditions is more than 90  calendar days. This estimate considers size, condition, location, and price range of the subject and surrounding properties.

**Conditions of Appraisal**
Value assigned to the subject in it's "AS IS" condition. Deem this a summary report. Use of this appraisal is intended only for the Client mentioned on page one of GPAR.

EX 5 PG 7 of 17

EX 5 PG 8 of 17

File No. C110072

## Scope of Work, Assumptions and Limiting Conditions

Scope of work is defined in the Uniform Standards of Professional Appraisal Practice as " the type and extent of research and analyses in an assignment." In short, scope of work is simply what the appraiser did and did not do during the course of the assignment. It includes, but is not limited to: the extent to which the property is identified and inspected, the type and extent of data researched, the type and extent of analyses applied to arrive at opinions or conclusions.

The scope of this appraisal and ensuing discussion in this report are specific to the needs of the client, other identified intended users and to the intended use of the report. This report was prepared for the sole and exclusive use of the client and other identified intended users for the identified intended use and its use by any other parties is prohibited. The appraiser is not responsible for unauthorized use of the report.

The appraiser's certification appearing in this appraisal report is subject to the following conditions and to such other specific conditions as are set forth by the appraiser in the report. All extraordinary assumptions and hypothetical conditions are stated in the report and might have affected the assignment results.

1. The appraiser assumes no responsibility for matters of a legal nature affecting the property appraised or title thereto, nor does the appraiser render any opinion as to the title, which is assumed to be good and marketable. The property is appraised as though under responsible ownership.

2. Any sketch in this report may show approximate dimensions and is included only to assist the reader in visualizing the property. The appraiser has made no survey of the property.

3. The appraiser is not required to give testimony or appear in court because of having made the appraisal with reference to the property in question, unless arrangements have been previously made thereto.

4. Neither all, nor any part of the content of this report, copy or other media thereof (including conclusions as to the property value, the identity of the appraiser, professional designations, or the firm with which the appraiser is connected), shall be used for any purposes by anyone but the client and other intended users as identified in this report, nor shall it be conveyed by anyone to the public through advertising, public relations, news, sales, or other media, without the written consent of the appraiser.

5. The appraiser will not disclose the contents of this appraisal report unless required by applicable law or as specified in the Uniform Standards of Professional Appraisal Practice.

6. Information, estimates, and opinions furnished to the appraiser, and contained in the report, were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished to the appraiser is assumed by the appraiser.

7. The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil, or structures, which would render it more or less valuable. The appraiser assumes no responsibility for such conditions, or for engineering or testing, which might be required to discover such factors. This appraisal is not an environmental assessment of the property and should not be considered as such.

8. The appraiser specializes in the valuation of real property and is not a home inspector, building contractor, structural engineer, or similar expert, unless otherwise noted. The appraiser did not conduct the intensive type of field observations of the kind intended to seek and discover property defects. The viewing of the property and any improvements is for purposes of developing an opinion of the defined value of the property, given the intended use of this assignment. Statements regarding condition are based on surface observations only. The appraiser claims no special expertise regarding issues including, but not limited to: foundation settlement, basement moisture problems, wood destroying (or other) insects, pest infestation, radon gas, lead based paint, mold or environmental issues. Unless otherwise indicated, mechanical systems were not activated or tested.

This appraisal report should not be used to disclose the condition of the property as it relates to the presence/absence of defects. The client is invited and encouraged to employ qualified experts to inspect and address areas of concern. If negative conditions are discovered, the opinion of value may be affected.

Unless otherwise noted, the appraiser assumes the components that constitute the subject property improvement(s) are fundamentally sound and in working order.

Any viewing of the property by the appraiser was limited to readily observable areas. Unless otherwise noted, attics and crawl space areas were not accessed. The appraiser did not move furniture, floor coverings or other items that may restrict the viewing of the property.

9. Appraisals involving hypothetical conditions related to completion of new construction, repairs or alteration are based on the assumption that such completion, alteration or repairs will be competently performed.

10. Unless the intended use of this appraisal specifically includes issues of property insurance coverage, this appraisal should not be used for such purposes. Reproduction or Replacement cost figures used in the cost approach are for valuation purposes only, given the intended use of the assignment. The Definition of Value used in this assignment is unlikely to be consistent with the definition of Insurable Value for property insurance coverage/use.

11. The ACI General Purpose Appraisal Report (GPAR™) is not intended for use in transactions that require a Fannie Mae 1004/Freddie Mac 70 form, also known as the Uniform Residential Appraisal Report (URAR).

Additional Comments Related To Scope Of Work, Assumptions and Limiting Conditions

This form Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc. All Rights Reserved
(GPAR™) General Purpose Appraisal Report 12/2005
GPARLIM 05082008

**Appraiser's Certification**

The appraiser(s) certifies that, to the best of the appraiser's knowledge and belief:

1. The statements of fact contained in this report are true and correct.

2. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are the appraiser's personal, impartial, and unbiased professional analyses, opinions, and conclusions.

3. Unless otherwise stated, the appraiser has no present or prospective interest in the property that is the subject of this report and has no personal interest with respect to the parties involved.

4. The appraiser has no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

5. The appraiser's engagement in this assignment was not contingent upon developing or reporting predetermined results.

6. The appraiser's compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

7. The appraiser's analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice.

8. Unless otherwise noted, the appraiser has made a personal inspection of the property that is the subject of this report.

9. Unless noted below, no one provided significant real property appraisal assistance to the appraiser signing this certification.  Significant real property appraisal assistance provided by:

**Additional Certifications:**

Definition of Value:  [X] Market Value     [ ] Other Value: _____
Source of Definition: Fannie Mae
DEFINITION OF VALUE...the most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:(1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial agreements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

ADDRESS OF THE PROPERTY APPRAISED:
15717 Pine Ave
Fontana, CA 92335
EFFECTIVE DATE OF THE APPRAISAL: April 8, 2011
APPRAISED VALUE OF THE SUBJECT PROPERTY $ 176,000

| APPRAISER | SUPERVISORY APPRAISER |
|---|---|
| Signature: | Signature: |
| Name:  Chad Harris | Name: |
| State Certification # | State Certification # |
| or License #  AL031917 | or License # |
| or Other (describe): _____ State #: _____ | State |
| State:  CA | Expiration Date of Certification or License: |
| Expiration Date of Certification or License:  09/18/2011 | Date of Signature: |
| Date of Signature and Report:  04/11/2011 | Date of Property Viewing: |
| Date of Property Viewing:  April 8th, 2011 | Degree of property viewing: |
| Degree of property viewing: | [ ] Interior and Exterior   [ ] Exterior Only   [ ] Did not personally view |
| [X] Interior and Exterior   [ ] Exterior Only   [ ] Did not personally view | |

Produced using ACI software, 800 234 8727 www.aciweb.com
Page 2 of 2
This form Copyright © 2005-2008 ACI Division of ISO Claims Services, Inc.   All Rights Reserved
(gPAR™) General Purpose Appraisal Report  12/2005
GPARLIM_CI 08112008

Harris Appraisals
64



DIMENSION LIST ADDENDUM

| | | | |
|---|---|---|---|
| Client: homeowner | | File No.: C110072 | |
| Property Address: 15717 Pine Ave | | Case No.: | |
| City: Fontana | State: CA | | Zip: 92335 |

| GROSS BUILDING AREA (GBA) | 1,170 |
|---|---|
| GROSS LIVING AREA (GLA) | 1,170 |

| Area(s) | Area | % of GLA | % of GBA |
|---|---|---|---|
| Living | 1,170 | | 100.00 |
| Level 1 | 1,170 | 100.00 | 100.00 |
| Level 2 | 0 | 0.00 | 0.00 |
| Level 3 | 0 | 0.00 | 0.00 |
| Other | 288 | 24.62 | 24.62 |
| Basement (GBA) ☐ | 0 | | |
| Garage ☐ | 400 | | |

| Area Measurements | | | Area Type | | | | | |
|---|---|---|---|---|---|---|---|---|
| Measurements | Factor | Total | Level 1 | Level 2 | Level 3 | Other | Bsmt. | Garage |
| 45.00 x 26.00 | x 1.00 | = 1,170.00 | ☒ | ☐ | ☐ | ☐ | ☐ | ☐ |
| 20.00 x 20.00 | x 1.00 | = 400.00 | ☐ | ☐ | ☐ | ☐ | ☐ | ☒ |

| | |
|---|---|
| Client: homeowner | File No.: C110072 |
| Property Address: 15717 Pine Ave | Case No.: |
| City: Fontana | State: CA    Zip: 92335 |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: April 8, 2011
Appraised Value: $ 176,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

66

| Client: homeowner | | File No.: C110072 |
|---|---|---|
| Property Address: 15717 Pine Ave | | Case No.: |
| City: Fontana | State: CA | Zip: 92335 |



**COMPARABLE SALE #1**

15561 Randall Ave
Fontana
Sale Date: 01/03/2011
Sale Price: $ 160,000



**COMPARABLE SALE #2**

15753 Randall Ave
Fontana
Sale Date: 03/10/2011
Sale Price: $ 225,000



**COMPARABLE SALE #3**

9372 Beech Ave
Fontana
Sale Date: 03/11/2011
Sale Price: $ 82,000

EX 5 PG 12 of 17

COMPARABLE PROPERTY PHOTO ADDENDUM

| Client: homeowner | | File No.: C110072 |
|---|---|---|
| Property Address: 15717 Pine Ave | | Case No.: |
| City: Fontana | State: CA | Zip: 92335 |



**COMPARABLE SALE #4**

**15355 Randall Ave**
**Fontana**
Sale Date: Current Listing
Sale Price: $ 168,400



**COMPARABLE SALE #5**

**9820 Beech Ave**
**Fontana**
Sale Date: Pending Sale
Sale Price: $ 150,000



**COMPARABLE SALE #6**

Sale Date:
Sale Price: $

68

| Client:  homeowner | | File No.:  C110072 |
| Property Address: 15717 Pine Ave | | Case No.: |
| City: Fontana | State: CA | Zip: 92335 |



Rear Yard



Kitchen



Bathroom

EX 5 PG 14 of 17

| Client:  homeowner | | File No.:  C110072 | |
|---|---|---|---|
| Property Address: 15717 Pine Ave | | Case No.: | |
| City: Fontana | State: CA | | Zip: 92335 |



Bathroom



Casita



EX 5 PG 15 of 17

**FLOORPLAN**

| Client: homeowner | | File No.: C110072 |
|---|---|---|
| Property Address: 15717 Pine Ave | | Case No.: |
| City: Fontana | State: CA | Zip: 92335 |



Comments:

| AREA CALCULATIONS SUMMARY | | | |
|---|---|---|---|
| Code | Description | Net Size | Net Totals |
| GLA1 | First Floor | 1170.0 | 1170.0 |
| GAR | Garage | 400.0 | 400.0 |
| OTH | Casita | 288.0 | 288.0 |
| | Net LIVABLE Area | (Rounded) | 1170 |

| LIVING AREA BREAKDOWN | |
|---|---|
| Breakdown | Subtotals |
| First Floor | |
| 26.0  x   45.0 | 1170.0 |
| 1 Item                    (Rounded) | 1170 |

71

EX 5 PG 16 of 17

LOCATION MAP

| Client: homeowner | | File No.: C110072 |
| Property Address: 15717 Pine Ave | | Case No.: |
| City: Fontana | State: CA | Zip: 92335 |



EX 5 PG 17 of 17

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**100 North Barranca Avenue, Suite 250, West Covina, CA 91741-1600.**

A true and correct copy of the foregoing document described as **Motion to Avoid Junior Lien on Principal Residence [11 U.S.C. § 506(d)]** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

**I.   TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On_____, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☐ Service information continued on attached page

**II.   SERVED BY U.S. MAIL OR CERTIFIED MAIL** (indicate method for each person or entity served): On **May 9, 2011,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Thomas B. Donovan
U S Bankruptcy Judge
255 E. Temple Street, Suite 1352
Los Angeles, CA 90012

Kathy A. Dockery
Chapter 13 Trustee
700 S. Flower Street, Suite 1950
Los Angeles, CA 90017

United States Trustee
Los Angeles Division
725 S. Figueroa Street, 26th Floor
Los Angeles, CA 90017

☒ .. Service information continued on attached page

**III.  SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on_____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| May 9, 2011 | Nancy Arce | *Nancy Arce* |
|-------------|------------|--------------|
| Date | Type Name | Signature |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

III.    **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each
person or entity served):
(Attached page to Proof of Service-please include any additional or alternative addresses and attach
additional pages if needed) (Certified Mail required for service on a national bank.)

| Name / Address | Address from | Delivery Method |
|---|---|---|
| Name of 1st Lien Holder & Address – Parent Company<br><br>Bank of America, N.A.<br>101 S. Tryon Street<br>Charlotte, NC  28202 | ☐ Proof of claim ☐ Secretary of State<br>☒ FDIC website ☐ Other: *specify* | Delivery Method<br>☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |
| Name of 1st Lien Holder- Agent for Service of Process<br><br>CT Corporation System<br>818 W. 7th Street<br>Los Angeles, CA  90017 | Address from:<br>☐ Proof of claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: *specify* | Delivery Method<br>☐US Mail<br>☒Certified mail –<br>Tracking #_____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |
| Name of 1st Lien Holder – Officer or Agent<br><br>Brian T. Moynihan, CEO and President<br>Bank of America Corporation<br>214 N Tryon Street<br>NC1-027-20-05<br>Charlotte, NC 28255 | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: *specify*<br><br>*Web Search* | Delivery Method<br>☐US Mail<br>☒Certified mail –<br>Tracking #_____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |
| Name of 1ˢᵗ Lien Holder – Servicing Agent<br><br>BAC Home Loans Servicing, LP<br>4500 Park Granada<br>Calabasas, CA  91302 | Address from:<br>☐ Proof of claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: specify | Delivery Method<br>☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |
| Name of 1st Lien Holder- Agent for Service of Process for BAC Home Loans Servicing, LP<br><br>C T Corporation System<br>111 Eight Avenue, 13th Floor<br>New York, NY 10011 | Address from:<br>☐ Proof of claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: specify | Delivery Method<br>☐US Mail<br>☒Certified mail –<br>Tracking #_____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |
| Name of 1st Holder & Address – Alternate address<br><br>BAC Home Loans Servicing, LP<br>TX2-977-01-03<br>P.O. Box 961206<br>Fort Worth, TX  76161 | Address from:<br>☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: specify<br><br>Web Search | Delivery Method<br>☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

| Name of 1st Holder & Address – Alternate address | Address from: | Delivery Method |
|---|---|---|
| BAC Home Loans Servicing, LP<br>PT-C-32 7105 Corporate<br>Plano, TX 75024 | ☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: specify<br><br>Web Search | ☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name:_____ |

| Name of 2nd Lien Holder & Address | Address from: | Delivery Method |
|---|---|---|
| Green Tree Servicing, LLC<br>1100 Landmark Towers<br>St. Paul, MN 55102 | ☐ Proof of claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: specify | ☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |

| Name of 2nd Lien Holder- Agent for Service of Process | Address from: | Delivery Method |
|---|---|---|
| CT Corporation System<br>2700 Lake Cook Road<br>Riverwoods, IL 60015 | ☐ Proof of claim ☒ Secretary of State<br>☐ FDIC website ☐ Other: specify | ☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |

| Name of 2nd Lien Holder – Officer or Agent | Address from: | Delivery Method |
|---|---|---|
| Keith Henderson, President<br>Green Tree Servicing, LLC<br>345 St. Peter Street<br>St. Paul, MN 55102 | ☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: specify<br><br>Web Search | ☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |

| Name of 2nd Lien Holder & Address – Alternate Address | Address from: | Delivery Method |
|---|---|---|
| Green Tree Servicing, LLC<br>P.O. Box 6172<br>Rapid City, SD 57709 | ☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☒ Other: specify<br><br>Web Search | ☐US Mail<br>☒Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |

| Additional Address | Address from: | Delivery Method |
|---|---|---|
| Rafael V. Alvarez<br>Jennie Molina-Alvarez<br>15717 Pine Avenue<br>Fontana, CA 92335 | ☐ Proof of claim ☐ Secretary of State<br>☐ FDIC website ☐ Other: specify<br><br>Debtors | ☒US Mail<br>☐Certified mail –<br>Tracking # _____<br>☐Overnight mail –<br>Tracking #_____<br>Carrier Name: _____ |

This form is optional. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

October 2010                    75                    F 4003-2.4.MOTION